# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWIN L. MELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 14-0686 (RMC) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' motions to dismiss, ECF Nos. 13, 21 and 26. For the reasons discussed below, the Court will grant the motions and dismiss this action.[1]

### I. BACKGROUND

"On Feb[ruary] 6, 2012 . . . Shaquita Robinson gave birth to a baby[] girl and they both tested positive for cocaine." *Id.* ¶ 13. Ms. Robinson, whom the Child and Family Services Agency ("CFSA") had placed in a residential drug treatment facility, abandoned the baby ("J.R."), and facility staff "escorted infant  J.R. to [CFSA]" on March 1, 2012. *Id.* ¶ 14; *see generally* Reply Mot. to the Mot. to Dismiss Defendants CFSA, Pamela Soncini, Vanessa William[s]-Campbell, Kelly Friedman, Whitney Bellinger, Rhydell Ngoh, and Elise Hartung, Pursuant to 1983 & 1985, ECF No. 37 ("Pl.'s Opp'n to CFSA Mot."), Exs. (Disposition Report) at 12-17 (page numbers designated by Plaintiff) & Ex. (Contact Report dated July 18, 2012) at

---

[1]  In light of the Court's dismissal of this action, Plaintiff's Motion to Allow Defendant Zanielle Young To Be Serve[d] on Jan. 15th 201[5], ECF No. 44, and Request for Summary Judgment Against Defendant, ECF No. 41, will be denied as moot.

19. A paternity test subsequently confirmed that Plaintiff is J.R.'s natural father. Compl. ¶ 34.

At the time of J.R.'s birth, Plaintiff was incarcerated at the Fairfax County Detention Center, *id.*

¶ 16, and he remained incarcerated in Virginia through 2014, *see id.* ¶¶ 38, 54-55.

  A child neglect proceeding commenced in the Superior Court of the District of

Columbia ("Family Court") on March 5, 2012, and pursuant to its Initial Hearing Order, J.R. was

placed in shelter care. *See* Pl.'s Opp'n to CFSA Mot., Ex. (excerpt from Motion for Termination

of the Parent and Child Relationship) at 27. Plaintiff was served a summons on April 5, 2012.

Compl. ¶ 16; *see id.*, Ex. (Summons and Order Directing Appearance (Neglect)) at 10. A pretrial

hearing was set for May 16, 2012, and a trial was set for June 4, 2012. Compl. ¶ 16. The

presiding judge appointed David S. Stein ("Stein") to represent Plaintiff in that matter. *Id.* ¶¶ 17-

18. It was Plaintiff's intention to assert his parental rights, *see id.* ¶ 18, and to seek full custody

of J.R. upon his release, *see id.* ¶¶ 21, 28. Plaintiff and Stein discussed J.R.'s placement with a

member of Plaintiff's family in the interim. *Id.* ¶ 19.

  Assigned to J.R.'s case was case worker Whitney L. Bellinger, of CFSA's In

Home & Reunification Services Division. *Id.* ¶ 6; *see* Pl.'s Opp'n to CFSA Mot., Ex. (excerpt

from Closing Arguments of Adoption Petitioners Z.K.D. & D.L.R.) at 23-24; *see also id.*

(Disposition Report) at 17. Among other recommendations to the Family Court, the CFSA

Defendants recommended a permanent goal of adoption, that J.R. remain in the foster home in

which she had been placed, and that J.R.'s removal from her mother was in the best interest of

the child. *See id.*, Ex. (Disposition Report) at 15-16.

  Unbeknownst to Plaintiff, Ms. Robinson entered into a Stipulation Agreement on

May 16, 2012, pursuant to which she "waived probable cause . . . and agreed to [the]

government's evidence toward [a] judicial determination under D.C. Code § 16-2301(9)(A)(iii)."

Compl. ¶ 16.  On that date, the Family Court adjudicated J.R. a neglected child and committed

her to CSFA's care and custody.  *See* Pl.'s Opp'n to CFSA Mot., Ex. (excerpt from

Memorandum of Points and Authorities in Support of the Motion for Termination of the Parent

and Child Relationship) at 32.  Stein allegedly "never put Plaintiff on notice or advised [him] of

the . . . stipulation and the Court rendering J.R. . . . a neglected child . . . or what the outcome

would mean" with regard to Plaintiff's interest in "seeking full custody" of J.R.  Compl. ¶ 21.

CFSA initially pursued dual goals for J.R.: reunification with Ms. Robinson and

concurrently her permanent adoption.  *Id.* ¶¶ 39-40, 50, 72.  In light of Ms. Robinson's

circumstances, however, reunification apparently was problematic.[2]  *See id.* ¶¶ 24, 52; *see also*

*id.* ¶¶ 56-62.  Plaintiff identified his niece, Zanielle Young, as a potential placement for J.R. until

his release from custody.[3]  *Id.* ¶ 38.  In August 2012, Plaintiff met with Ms. Bellinger at the

Fairfax County Detention Center to "discuss case planning . . . and [J.R.'s] placement in [Ms.

Young's] home."  *Id.* ¶ 30.  CFSA did place J.R. with Ms. Young, who had taken kinship care

classes, *id.* ¶ 33, and who later became a licensed foster parent, *see id.* ¶¶ 48, 59, 67.

Elise Hartung, who succeeded Ms. Bellinger, took over J.R.'s case in or about

September 2012.  *Id.* ¶ 32.  According to Plaintiff, Ms. Hartung reported to the Family Court that

his incarceration rendered him unable to participate in any services CFSA could have provided,

*see, e.g., id.* ¶¶ 42, 51, and recommended continued efforts towards J.R.'s permanent adoption,

*see, e.g., id.* ¶¶ 50-52, 57, yet failed to respond to Plaintiff's requests to participate in case

---

[2] Ms. Robinson had a history of drug abuse, *see* Compl. ¶¶ 14, 20, 24, and her whereabouts were unknown at that time, *see id.* ¶ 39.  It was determined, apparently, that reunification with Ms. Robinson was not a viable option in light of her continued drug use, failure to appear for scheduled visits with J.R., homelessness, outstanding arrest warrants, and stipulated neglect.  *See id.* ¶¶ 39-40; *see also* Pl.'s Opp'n to CFSA Mot., Ex. (Contact Report dated July 18, 2012) at 19.

[3] Plaintiff names Ms. Young as a defendant in this action, *see* Compl. ¶ 9, but service of process has not been effected, *see* Process Receipt and Return, ECF No. 25.

planning, *see id.* ¶¶ 42, and ignored his stated desire for reunification with J.R., *see, e.g., id.* ¶¶ 32, 49-50.[4]   Nor did Ms. Hartung forward to J.R. the cards and gifts Plaintiff sent. *Id.* ¶ 90.

Apparently there was a misunderstanding as to Ms. Young's role. According to Plaintiff, defendants Hartung, Ngoh, Williams-Campbell and Soncini "forced, coerced and intimidated" Ms. Young "to agree to permanent adoption of J.R." *Id.* ¶ 56.   Stein apparently was under the impression that Plaintiff "support[ed] placement with Ms. Young as well as the agency . . . facilitating the process." *Id.* ¶ 58.   Ms. Hartung allegedly "wanted something more permanent for J.R." because of her "young age," such that "guardianship [was not an] option in J.R.['s] case." *Id.* ¶ 57.   Plaintiff, however, claimed that he "never supported permanency placement." *Id.* ¶ 63.   Rather, he agreed to a guardianship arrangement pending his release from incarceration, *see id.* ¶¶ 30, 32, 63, at which time he would pursue reunification with J.R, *see id.* ¶¶ 46, 49.   It was Plaintiff's understanding that, if Ms. Young were appointed J.R.'s guardian, his parental rights would remain intact. *See id.* ¶ 65.   Nevertheless, Defendants pressed not only for J.R.'s temporary placement with Ms. Young, but also for termination of Plaintiff's parental rights, *see id.* ¶¶ 64, 83, and for J.R.'s adoption by Ms. Young, *see id.* ¶¶ 46, 49, 52, 57-62.

According to Plaintiff, Stein failed to forward reports prepared by CFSA regarding J.R., *id.* ¶ 44, did not respond to his "long letters requesting legal answers why the process was taking so long," *id.* ¶ 45, and failed to explain to Plaintiff how the denial of services due to his incarceration would affect him and his goal of reunification with J.R, *see id.* ¶¶ 51-53. Their relationship deteriorated further in April 2013, when Stein allegedly conspired with Ms.

---

[4]   Representations were made the Family Court that, "[d]ue to [Plaintiff's] lengthy incarceration, [he was] not available to provide care for [J.R.]," or "to form a consistent and reliable interaction or relationship with [J.R.]," and, therefore, it was "not . . . in the best interest of [J.R.] to languish in foster care in anticipation of [her] father's release from incarceration that [was not expected to] materialize for another year and a half." Pl.'s Opp'n to CFSA Mot., Ex. (excerpt from Memorandum of Points and Authorities in Support of the Motion for Termination of the Parent and Child Relationship) at 38.

Hartung and the other CFSA defendants "to change J.R[.'s] dual goal to permanent adoption" alone. *Id.* ¶ 72; *see id.* ¶ 86.   Further, Plaintiff alleged, CFSA Defendants Ngoh and Williams-Campbell allegedly submitted a "secret report" to the Family Court in April 2013, *id.* ¶ 71, and with Stein participated in a "secret" Family Court hearing on April 25, 2013, *id.* ¶ 72, "in Plaintiff's absence," during which Stein "conspired, agreed, and without Plaintiff['s] knowledge . . . change[d] J.R. dual goal to permanent adoption," *id.*   "On Oct[ober] 23, 2013, Plaintiff was served with a separate consolidated petition for adoption and also a petition for terminating Plaintiff's parental rights that was filed [on] June 7[], 2013." *Id.* ¶ 83; *see id.* ¶ 76.

In December 2013, Plaintiff asked the Family Court to remove Stein "pursuant to conflict of interest," *id.* ¶ 75; *see id.* ¶ 79, 87, and asked Stein directly to withdraw, *see id.* ¶¶ 79-80, notwithstanding Stein's understanding that, on Plaintiff's instruction, he would contest J.R.'s adoption, *see, e.g.*, Pl.'s Opp'n to CFSA Mot., Ex. (Letters to plaintiff from David S. Stein dated June 19, 2013, August 23, 2013 and October 13, 2013) at 53-57.   On January 2, 2014, the Family Court "relieved . . . Stein of all responsibilities and [appointed] Attorney Andrew Murane" to represent Plaintiff.   Compl. ¶ 91.   Plaintiff participated by telephone at a Family Court hearing on January 29, 2014, *id.* ¶ 92, and corresponded with new counsel, *see id.* ¶¶ 93-94, 102.   None of the parties has provided a more current status of the Family Court proceedings, and it is not known whether Plaintiff's parental rights have been terminated or whether J.R. has been adopted.

Generally, Plaintiff alleges that Defendants deprived him of services geared toward his reunification with J.R., and of an opportunity to participate in J.R.'s case planning. *See id.* ¶¶ 104-06.   He further alleges that Defendants conspired to effect J.R.'s adoption by Ms. Young against his wishes and in violation of rights protected by statute and the United States

5

Constitution. *See id.* ¶¶ 107-09. He brings this "Civil Rights Action . . . for damages and injuncti[ve] relief under 42 U.S.C. [§§] 1983 and [19]85, alleging non-compliance [with] Federal Enforceable Statutory Rights . . . under Adoption Assistance and Child Welfare Act of 1980[] and Conspiracy . . . in violation of the First, Fourteenth and Fifth Amendment[s] of the Constitution and Equal Protection of the Law, Equal Treatment of the Law." Compl. at 1; *see generally id.* ¶¶ 104-09. Among other relief, Plaintiff demands an order directing Defendants to "provide all available services to Plaintiff without regard to incarceration," and to "provide steps toward reunification with the father and daughter without regard to any discrimination." *Id.* at 24. He also demands compensatory and punitive damages. *See id.* at 25-26.

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(1)

Defendants move to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this Court lacks subject matter jurisdiction over plaintiff's claims. *See generally* Mem. of P. & A. in Support of Def. The District of Columbia's Mot. to Dismiss Pl.'s Compl., ECF No.13 ("District's Mem.") at 5-8; Mem. of P. & A. in Support of Def. Stein's Mot. to Dismiss, ECF No. 21-1 ("Stein Mem.") at 9; Mem. of P. & A. in Support of Defs. The District of Columbia Child and Family Services Agency, Pamela Soncini, Vanessa Williams-Campbell, Kelly Friedman, Whitney Bellinger, Rhydeil Ngoh and Elise Hartung's Mot. to Dismiss Pl.'s Compl., ECF No. 25 ("CFSA Mem.") at 3-4.

"Federal district courts are courts of limited jurisdiction," and "it is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Plaintiff therefore bears the initial burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction

over his claims. *Id.*; *see Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 104 (D.D.C. 2007). In deciding a motion brought under Rule 12(b)(1), the Court "may consider materials outside the pleadings" and "accept[s] all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (internal quotation marks and citations omitted).

The District of Columbia argues that Plaintiff's claims "arise from the events and circumstances following his child's removal," and thus "are inextricably intertwined with the Family Court proceedings." District's Mem. at 5. For this reason, it contends, the Family Court, not this federal district court, has jurisdiction over Plaintiff's claims. *Id.* In support of its argument, the District points to provisions of the District of Columbia Code to establish that "the Family Court has original jurisdiction over 'proceedings in which a child, as defined in section 16-2301, is alleged to be delinquent, neglected, or in need of supervision,'" District's Mem. at 5-6 (citing D.C. Code § 11-1101(a)(13)), as well as adoption proceedings, *id.* at 6 (citing D.C. Code § 11-1101(a)(9)). And, the District argues, "the Family Court retains jurisdiction over a matter after a child has been adjudicated neglected." *Id.* (citing D.C. Code § 16-2323) (additional citations omitted). Lastly, "[t]o the extent Plaintiff[] is challenging the underlying Family Court proceedings," the District argues that "this Court lacks subject matter jurisdiction over such claims" under the *Rooker-Feldman* doctrine. *Id.*

The CFSA Defendants also take the position that "Plaintiff's claims arise out of events and circumstances following his child's removal." CFSA Mem. at 3. They adopt the District's arguments, including its assertion that "this Court lacks jurisdiction over Plaintiff's Complaint pursuant to the *Rooker-Feldman* doctrine." *Id.* Stein, who also joins in the District's arguments, *see* Stein Mem. at 9, adds that "this Court . . . lacks jurisdiction" over Plaintiff's

claims "under the domestic relations exception," *id.*, which generally "divests federal courts of the power to issue divorce, alimony, and child custody decrees . . . or to determine child support obligations . . . ." *Delaney v. District of Columbia*, 659 F. Supp. 2d 185, 193 (D.D.C. 2009) (citations omitted).

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It prevents a plaintiff from seeking review of a Superior Court decision because a federal district court "lack[s] jurisdiction to review judicial decisions by state and District of Columbia courts." *Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (citing *District of Columbia v. Feldman*, 460 U.S. 462, 476 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

Plaintiff responds that the *Rooker- Feldman* doctrine does not apply to this case. *See* Mem. of P. & A. in Support of Pl.'s Response to Defendant (the District) and Defendant[']s Motion to Dismiss, ECF No. 35 ("Pl.'s Opp'n to District's Mot.") at 8-9. He notes that the case in the Family Court "is still pending and no ruling has been entered." *Id.* at 8. Further, he clarifies that he is not "inviting the district court to review and reject any family court judgments," and instead is "inviting the district court to determine whether defendant[s'] actions [have deprived Plaintiff] of [his] substantive, procedural, equal protection, and protection from discrimination practices in violation of [his] Due Process rights." *Id.* at 9; *see id.* at 2 (stating that Plaintiff "alleges that all injuries [arose] from the adverse actions of [D]efendants outside the proceedings in the Family [Court]"); *see also id.* at 8 (averring that "injuries . . . are . . . traceable

8

to [D]efendant[s'] actions, as opposed to the Superior Court orders those actions allegedly caused").

Plaintiff does not challenge a Superior Court judgment or otherwise seek review of a Superior Court ruling.[5]  Nor does Plaintiff ask this Court to rule on a domestic relations matter, such J.R.'s custody or adoption.  The Court therefore denies Defendants' motions to dismiss for lack of subject matter jurisdiction.[6]

### B. Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under [Rule] 12(b)(6) tests whether the complaint properly states a claim on which relief may be granted. " *Davis v. Billington*, 775 F. Supp. 2d 23, 32 (D.D.C. 2011).  Although "'detailed factual allegations'" are not required, a plaintiff must offer "more than an unadorned, the defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citation omitted).  A plaintiff must offer more than mere "labels and conclusions . . . [or] a formulaic recitation of the elements of a cause of action." *Id.*

---

[5]  Even if this Court were authorized to review a Superior Court ruling, it would abstain from interfering in ongoing Superior Court proceedings. *See Delaney*, 659 F. Supp. 2d at 193 (citing *District Props. Assocs. v. District of Columbia*, 743 F.2d 21, 27 (D.C. Cir. 1984) (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *see also Whitehead v. District of Columbia Child Support Servs. Div.*, 892 F. Supp. 2d 315, 318-19 (D.D.C. 2012) (finding that, under *Younger* abstention doctrine, district court lacked subject matter jurisdiction over child support order and enforcement).

[6]  Under the doctrine of *res judicata*, a prior judgment on the merits of a claim bars a plaintiff from relitigating the same claim. *See I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously").  Plaintiff deems "the res judicata doctrine . . . misplaced" because he is not "requesting the District Court to . . . review and reject any (Family [Court]) judgments pursuant to finding of neglect; the petition to terminate parental rights or petition for adoption." Pl.'s Mot. to the Defendant The District of Columbia's Mot. to Dismiss and Jointed by Defs., ECF No. 35 at 3; *see also* Pl.'s Opp'n to District's Mot. at 15 ("A finding that defendants violated Plaintiff['s] . . . due process rights, equal protection/equal treatment rights . . . will not involve the . . . invalidation of any conclusion or judgment reach[ed] by the [Family] Court.").  Defendants' motions to dismiss on the ground that Plaintiff's claims are barred under the doctrine of *res judicata*, *see* District's Mem. at 8-10; CFSA Mem. at 3, will be denied.

at 555. Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "A complaint alleging facts which are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). The complaint is construed liberally in a plaintiff's favor, and the Court accepts as true all well-pleaded factual allegations. *Davis*, 775 F. Supp. 2d at 32-33. Nevertheless, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### 1. The CFSA Is *Non Sui Juris*

The CFSA Defendants move to dismiss the agency as a party defendant. CFSA Mem. at 4. "As an agency within the District of Columbia government, CFSA is *non sui juris* and cannot be a party to this matter." *Id.* The motion will be granted, and CFSA will be dismissed as a party in this action. *See, e.g., Hickman v. Library of Congress*, __ F. Supp. 3d __, __, 2014 WL 6612905, at *2 (D.D.C. Nov. 24, 2014) (finding that the D.C. Public Library as subordinate District government agency is not suable entity); *Whitehead v. District of Columbia Child Support Servs. Div.*, 892 F. Supp. 2d 315, 319 (D.D.C. 2012) (dismissing CSSD as *non sui juris*); *see also Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (listing various District of Columbia agencies that are *non sui juris*). The Court proceeds as if Plaintiff had sued the District of Columbia directly.

2. The Complaint Fails to State a Claim Under the Adoption Assistance and Child Welfare Act

According to Plaintiff, Defendants failed to make "'reasonable efforts' to provide

him services," or to allow him to participate in J.R.'s case planning, among other deficiencies,

*see* Compl. ¶¶ 104-05, in violation of the Adoption Assistance and Child Welfare Act of 1980,

*see* 42 U.S.C. §§ 620-28, 670-79a. The District argues that, because Plaintiff "neither identifies

the specific provision on which his claim rests nor alleges how any of the Act's specific

provisions were violated," the claim must be dismissed. District's Mem. at 11. "Even if Plaintiff

has satisfied the pleading requirements," the District asserts that his complaint "does not state a

cognizable claim for relief." *Id.*; *see* CFSA Defs.' Mem. at 3; Stein Mem. at 9. The Court

concurs.

The Act "establishes a federal reimbursement program for certain expenses

incurred by the States in administering foster care and adoption services." *Suter v. Artist M.*, 503

U.S. 347, 350-51 (1992). A private individual has no cause of action under either the Act itself

or through an action under 42 U.S.C. § 1983. *See id.* at 364 ("We conclude that 42 U.S.C. §

671(a)(15) neither confers an enforceable private right on its beneficiaries nor creates an implied

cause of action on their behalf."). Accordingly, the Court will grant Defendants' motions to

dismiss Plaintiff's claim under the Adoption Assistance and Child Welfare Act.

3. The Complaint Fails to State a Claim Under § 1983

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress . . . .

*Id.* Under § 1983, an individual may bring suit against a municipality for policies or practices that result in violations of constitutional rights. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Section 1983 is not itself a source of substantive rights; rather, it is a method of vindicating federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 807, 811 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To state a claim under § 1983, a complaint must allege facts sufficient to show that (1) the conduct of which Plaintiff complains was committed by a person acting under color of District of Columbia law, and (2) the conduct deprived Plaintiff of protected rights under the United States Constitution or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is necessary first to identify the specific constitutional right allegedly infringed.[7] *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm.").

The Court understands Plaintiff to assert a constitutionally-protected liberty interest in J.R.'s care and custody. A parent has an "interest . . . in the companionship, care, custody, and management of his [child]." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *see Runnymede-Piper v. District of Columbia*, 952 F. Supp. 2d 52, 57 (D.D.C. 2013) ("assuming *arguendo* that Plaintiff has sufficiently alleged a predicate violation founded in a parent's constitutional right to the custody of her child"). His "interest . . . does not evaporate

---

[7]  Plaintiff fails to state a claim for a violation of the Fourteenth Amendment, which does not apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 498 (1954).

simply because [he has] not been [a] model[] parent[] or [has] lost temporary custody of [his] child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Nor is this interest diminished because Plaintiff is a father. *See Stanley*, 405 U.S. at 652 (stating that unwed natural father's "interest in retaining custody of his children is cognizable and substantial"). A parent's interest is not absolute, however, and the government "has an urgent interest in the welfare of the child" with an eye towards "provid[ing] the child with a permanent home." *Santosky*, 455 U.S. at 766 (citing *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981)); *see also Stanley*, 405 U.S. at 650 ("The State's right -- indeed, duty -- to protect minor children through a judicial determination of their interests in a neglect proceeding is not challenged here."). "It is not disputed that state intervention to terminate the relationship between [a parent and his] child must be accomplished by procedures meeting the requisites of the Due Process Clause." *Lassiter*, 452 U.S. at 37 (Blackmun, J., dissenting).

Plaintiff's Complaint is lacking, however, in its failure to articulate adequately the deprivation of a protected right. Plaintiff alleges that he had received notice of proceedings in Family Court, that counsel had been appointed to represent him, and that he has participated in hearings through counsel and by telephone. Events may not have unfolded as Plaintiff wished, but his dissatisfaction with, for example, the CFSA Defendants' recommendations to the Family Court, or Stein's responses (or lack of timely responses) to Plaintiff's inquiries, do not form a basis for a due process violation.

Plaintiff is no more successful in articulating an equal protection claim. Generally, the Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Women Prisoners of District of Columbia Dep't of Corr. v. District of Columbia*, 93 F.3d 910,

924 (D.C. Cir. 1996) ( "The dissimilar treatment of dissimilarly situated persons does not violate equal protection."). Missing from the complaint are factual allegations to support the claim. For example, Plaintiff asserts that he "was . . . denied the same afforded parental rights," Pl.'s Opp'n to District's Mot. at 37, without identifying the "rights" of which he was deprived or the other individual or individuals to whom these rights were afforded. Nor does Plaintiff allege how these other individuals were similarly situated, as he must in order to state a viable equal protection claim. *See Mpras v. District of Columbia*, __ F. Supp. 3d __, __, 2014 WL 6603303, at *5 (D.D.C. Nov. 21, 2014) (dismissing equal protection claim in light of plaintiff's failure to "allege any facts … about who these other persons are or how they were similarly situated"), *appeal filed*, No. 14-7209 (D.C. Cir. Dec. 30, 2014). At most, Plaintiff suggests that Defendants treated him differently because of his incarceration, yet Plaintiff fails to acknowledge the restrictions necessarily imposed upon him or to allege that Defendants were legally obligated to have provided services to him regardless of the location and duration of his incarceration. *Cf. Scher v. Chief Postal Inspector*, 973 F.2d 682, 683 (8th Cir. 1992) (per curiam) ("Prisoners are not similarly situated to nonprisoners[.]"). It cannot be said that Defendants violated Plaintiff's rights by directing efforts towards or services to Ms. Robinson who was not incarcerated and who was living in the District of Columbia, rather than providing services to Plaintiff who was incarcerated in Virginia when J.R. was born and who remained incarcerated at all times relevant to the Complaint.

Even if Plaintiff had adequately alleged constitutional violations, the analysis would not be done. Rather, the Court next must determine whether the "complaint stated a claim that a custom or policy of the District of Columbia caused the constitutional violation alleged." *Baker*, 326 F.3d at 1306. The District of Columbia can be held liable under § 1983 only if it "is

14

itself responsible for an unconstitutional deprivation of rights." *Atchinson v. District of Columbia*, 73 F.3d 418, 420 (D.C. Cir. 1996) (citing *Monell*, 436 U.S. at 690-91).   In other words, "a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citations, brackets and internal quotation marks omitted); *see also Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) ("[M]unicipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom.").  "It is well-established that a municipality cannot be held responsible for [its] agents' constitutional torts under a *respondeat superior* theory, because the doctrine of *respondeat superior* liability does not apply to [§] 1983 claims." *Runnymede-Piper*, 952 F. Supp. 2d at 56 (citing *Warren*, 353 F.3d at 38).

   The District moves to dismiss Plaintiff's § 1983 claim because his Complaint fails to allege that "an established municipal policy or custom caused the constitutional violation[s] at issue."  District's Mem. at 12.  Plaintiff counters that the elements of his § 1983 claim are "satisfied by the actions of defendants Pamela Soncini, Van[]essa Williams-Campbell, Kelly Friedman, Whitney C. Bellinger, Rhydell A. Ngoh, Elise L. Hartung, Zanielle Young and Attorney David Stein," all of whom were "acting under color of law" when they "deprived the plaintiff[] of . . . federal rights pursuant to government policies, customs and unconstitution[al] statutes on its face, within the Fifth and First Amendment[s]."  Pl.'s Opp'n to District's Mot. at 4-5; *see id.* at 4 (alleging that the "CFSA defendants and . . . Stein unlawfully conspired against Plaintiff[] in such a way that deprived [him] of Constitutional Rights").  For example, Plaintiff asserts, Ms. Hartung deprived him of services and denied him an opportunity to have contact with J.R., and these actions were approved by her superiors, *see id.* at 5-6, with whose assistance

Ms. Soncini "personally prepared the petition for termination of father and child relationship,"

*id.* at 6.  Thus Plaintiff claims that each defendant "actively participated in the deprivations of

[his] rights."  *Id.*  None of these assertions is set forth in the Complaint, the review of which

reveals only a single mention of a policy, practice or custom:

> [CFSA] by virtue of the existence of persistent pervasive practice,
> customs attributable to the course deliberately by official policy
> maker [Elise] Hartung and adopted by its supervisor/managers R.
> Ngoh, K. Friedman, V. Williams-Campbell and P. Soncini
> discriminatorily determining that Plaintiff's incarceration is a
> prerequisite for denying all services . . . and form a basis [for]
> terminat[ing] all parental rights.

Compl. ¶ 106.  Plaintiff neither identifies nor describes the offending practice or custom, the

enforcement of which caused the constitutional violations he has alleged.  At most, Plaintiff

alleges in a conclusory fashion that a single individual took actions with respect to a single child

for which her supervisors and the District of Columbia as their employer purportedly are liable

under a *respondeat superior* theory.  His "complaint thus fails to allege a necessary element of

a [§]1983 violation, namely, that there be a deprivation of rights under color of any statute,

ordinance, regulation, custom, or usage of [the District of Columbia]."  *Dant v. District of

Columbia*, 829 F.2d 69, 77 (D.C. Cir. 1987) (citing *Monell*, 436 U.S. at 691) (internal quotation

marks omitted); *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) (finding

that, where plaintiff "does not name or identify the policies, practices or customs, nor . . . cite[s]

any incident other than the events alleged in her complaint that might provide a basis for

concluding that [the Metropolitan Police Department] has any gender discriminatory policies,

practices or customs," she is "merely speculating that an unidentified policy and uncorroborated

practice or custom exists without providing any factual heft to support the allegation is

insufficient to state a claim under § 1983"); *Burnett v. Sharma*, 511 F. Supp. 2d 136, 142

(D.D.C. 2007) ("The amended pleading does not allege that an official District of Columbia

policy or custom caused plaintiff to suffer the deprivation of a constitutional or federal statutory right, and this pleading defect is fatal"). Where, as here, Plaintiff offers "the very type of 'naked assertions' the Supreme Court found incapable of surviving a Rule 12(b)(6) motion to dismiss," *Jackson v. Donovan*, 856 F. Supp. 2d 147, 150 (D.D.C. 2012), *aff'd*, No. 12-5154, 2012 WL 4774677 (D.C. Cir. Sept. 21, 2012), his § 1983 claims against the District of Columbia must be dismissed. *See, e.g.*, *Gabriel v. Corr. Corp. of Am.*, 211 F. Supp. 2d 132, 139 (D.D.C. 2002) (citing *Polk County v. Dodson*, 454 U.S. 312, 326–27 (1981) ("Where a plaintiff fails to allege the existence of any policy or custom that could have arguably violated his rights, dismissal is proper.").

Furthermore, "[a]s a general rule, absent allegations of a conspiracy with traditional state actors, neither appointed nor retained counsel are considered to be acting under color of state law for purposes of § 1983 liability." *Weber v. ACLU*, No. 06-11220, 2007 WL 438196, at *1 (E.D. La. Feb. 5, 2007) (citation omitted) (Magistrate Judge's Report and Recommendation); *see Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) (dismissing § 1983 claim against court-appointed appellate counsel in criminal matter, noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."). This Court does not consider Stein a "state actor" for purposes of § 1983 and Plaintiff's § 1983 claims against him will be dismissed.[8]

4. The Complaint Fails to State a Conspiracy Claim Under § 1985

---

[8] Plaintiff is proceeding *pro se* and *in forma pauperis*, such that the Clerk of Court and the United States Marshals Service are responsible for issuing summonses and effecting service of process. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3). Stein's motion to dismiss for failure to serve him within 120 days as is required under Rule 4(m) of the Federal Rules of Civil Procedure, *see* Stein Mem. at 9-10, will be denied.

Generally, under 42 U.S.C. § 1985(3), there is "a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681, 688 (D.C. Cir. 2009) (citations omitted); *see United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 834 (1983) (stating that § 1985(3) pertains to conspiracies to deny equal protection of the laws, and there must be some racial or other class-based animus behind the conspiracy). To state a viable claim under § 1985(3), Plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in [his] person or property or deprived of any right or privilege of a citizen of the United States.

*Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987).

Defendant Stein argues that the complaint "fails to assert a plausible claim of civil conspiracy" arising from his alleged collusion with defendants Hartung, Ngoh, Williams-Campbell, Soncini and Young "to violate Plaintiff's parental rights." Stein Mem. at 8. At most, he asserts, the conspiracy allegation "is nothing more than a 'formulaic recitation' that is insufficient as a matter of law." *Id.* (citation omitted). Further, Stein argues, the claim fails because "Plaintiff fails to assert any facts to support Defendants' alleged conspiracy was motivated by some class-based, invidiously discriminatory animus." *Id.* at 9. On review of the Complaint, the Court concurs.

"A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss," *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (footnote and citations omitted), and Plaintiff fails to do so. The Complaint also is deficient for its failure to articulate a racial or class-based animus behind the

alleged conspiracy. The fact that plaintiff had been incarcerated at all times relevant to the

Complaint, *see* Compl. ¶ 106, is insufficient. *See Jones v. Tyson Foods, Inc.* 971 F. Supp. 2d

648, 668-69 (N.D. Miss. 2013) (concluding that "Plaintiff's status as a prisoner is not an

immutable characteristic allowing him the protections of § 1985(3)"); *see also Bush v. Butler*,

521 F. Supp. 2d 63, 69 (D.D.C. 2007) ("Plaintiff must be able to identify a class with common

characteristics that has an identifiable existence independent of the fact that it members are

victims of defendants' tortious conduct."). Absent adequate allegations that there was "some

racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirators' action," *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971), the conspiracy claim

under § 1985 must be dismissed.

### 5. Defendants Soncini, Williams-Campbell, Friedman, Bellinger, Ngoh, and Hartung Are Protected by Absolute or Qualified Immunity

According to Plaintiff, the individual CFSA Defendants took several actions he

deemed objectionable, including submission of reports to the Family Court, which recommended

adoption as J.R.'s permanency goal generally and her adoption by Ms. Young specifically.

These defendants, "who are either government attorneys or social workers at CFSA," argue that

they "are entitled to absolute immunity for all actions taken in the context of a judicial

proceeding," that is, "for their work and court appearances relating to the neglect and adoption

petitions for J.R." CSFA Defs.' Mot. at 5-6. In addition, they argue that they are entitled to

qualified immunity for any "discretionary acts" taken "by pursuing a neglect petition and

supporting the adoption of J.R." *Id.* at 8. The Court has reviewed Plaintiff's submission, *see*

*generally* Pl.'s Opp'n to CFSA Defs.' Mot., ECF No. 37, and identifies no viable opposition to

these arguments.

Insofar as the CFSA Defendants, particularly the case workers and their supervisors, submitted statements to the Family Court in connection with either the neglect action or proceedings to terminate Plaintiff's parental rights, they are "entitled to absolute immunity from suit for what [they] said in the statement[s]." *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002) (citing *Imbler v. Pachtman,* 424 U.S. 409 (1976)). In these circumstances, Defendants would have functioned in the same manner as witnesses in a judicial proceeding, *id.* at 1117, and "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony," *Rehberg v. Paulk*, __ U.S. __, __, 132 S. Ct. 1497, 1505 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 329, 332-33 (1983)) (emphasis in original). In addition, because "government attorneys who prosecute child neglect actions perform 'functions analogous to those of a prosecutor [and] should be able to claim absolute immunity with respect to such acts.'" *Gray v. Poole*, 243 F.3d 572, 577 (D.C. Cir. 2001) (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)), Ms. Soncini enjoys absolute immunity with regard to official duties performed during Family Court proceedings regarding J.R.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, __ U.S. __, __, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted). "[A]ll but the plainly incompetent or those who knowingly violate the law" may enjoy the protection of qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

Accordingly, courts must "resolv[e] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

From the Court's review of Plaintiff's factual allegations and exhibits, it appears that the CFSA Defendants, particularly the case workers, performed investigatory and advisory functions with respect to J.R.'s placement, progress and permanency goals. These activities are akin to those performed by police officers in anticipation of a criminal prosecution, and therefore "are subject to qualified, not absolute, immunity." *Gray*, 275 F.3d at 1117.

### III. CONCLUSION

The Court finds that Plaintiff's Complaint fails to state claims upon which relief can be granted. Accordingly, the Complaint and this civil action will be dismissed. An Order is issued separately.

DATE: 27 March 2015

ROSEMARY M. COLLYER
United States District Judge